UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ROBERT EDWARD FIEDLER,**

      **Plaintiff,**

v.                                                  Case No:   6:18-cv-962-Orl-41KRS

**WELLS FARGO N.A.,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **[RENEWED] APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS (Doc. No. 7)** |
| **FILED:** | **July 6, 2018** |

**I.   BACKGROUND.**

    Plaintiff, Robert Edward Fiedler, filed this action against Defendant, Wells Fargo N.A. ("Wells Fargo").  Doc. No. 1.  In his original complaint, Fiedler asserted causes of action for breach of contract (Count I) and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II) based on alleged misrepresentations made to him by Wells Fargo when he attempted to modify his home loan.  With his complaint, Fiedler filed an Application to Proceed in District Court without Prepaying Fees or Costs (Short Form) (Doc. No. 2), which I construed as a motion to proceed *in forma pauperis*.  On June 27, 2018, I issued a Report and Recommendation recommending that the Court dismiss Fiedler's complaint and grant him the opportunity to file an

amended complaint. I also noted that Fiedler could file a renewed motion to proceed *in forma pauperis* with an amended complaint. Doc. No. 3. As relevant to this Report and Recommendation, I found that Fiedler's original complaint did not adequately allege the citizenship of the parties, thereby depriving the court of subject matter jurisdiction. *Id.* at 3-4. I also found that Fiedler had not sufficiently alleged which terms of the loan modification agreement were breached. *Id.* at 5. I recommended that Fiedler be required to either attach the loan agreements at issue or describe with specificity the contract terms that were allegedly breached by Wells Fargo. *Id.* at 6.

Fiedler objected to my Report and Recommendation. Doc. No. 8. On the same day, he also filed an amended complaint (Doc. No. 6) and a renewed motion to proceed *in forma pauperis* (Doc. No. 7). Several days later, he filed a second amended complaint (Doc. No. 9) and exhibits to the second amended complaint that were inadvertently omitted when that complaint was filed (Doc. No. 10). In the second amended complaint, Fiedler renews his breach of contract claim (Count I). He has dropped his FDUTPA claim and has instead added claims for violation of the automatic bankruptcy stay (Counts II and III)[1]. Based on the filing of the renewed motion to

---

[1] Count III is titled "Emotional Distress," but it appears to be simply a claim that Wells Fargo's alleged violation of the automatic bankruptcy stay caused Fiedler emotional distress. To the extent that this count was intended to be a freestanding claim for intentional infliction of emotional distress, its barebones allegations are too conclusory to state a claim and are notably lacking any allegation that Wells Fargo intended to cause him emotional distress or recklessly disregarded the probability of causing emotional distress. *See Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1557 (S.D. Fla. 1996) (setting forth the elements of an intentional infliction of emotional distress claim). The events described in Fiedler's second amended complaint also do not fit the requirements for a claim of negligent infliction of emotional distress. *See, e.g.*, *Willis v. Gami Golden Glades, LLC*, 967 So. 2d 846, 850 (Fla. 2007) (citation omitted) (summarizing requirements for negligent infliction of emotional distress claim). In his objection to my second Report and Recommendation, Fiedler objected to the recommendation that his claim for emotional distress be dismissed, Doc. No. 15, at 4, but he did not explain how the claims, as presently formulated, meet the pleading requirements for intentional or negligent infliction of emotional distress. Thus, I continue to consider Count III to be a part of the claim for violation of the automatic bankruptcy stay. As discussed below, I no longer recommend that Count III be dismissed.

proceed *in forma pauperis*, I withdrew my original Report and Recommendation and denied the original *in forma pauperis* motion as moot.   Doc. No. 11.

Pursuant to Federal Rule of Civil Procedure 15(a), Fiedler may amend his complaint only once as of right.   All other amendments require Court permission.   Nonetheless, because leave to amend should be freely given and Fiedler is proceeding *pro se*, I considered his second amended complaint as the operative complaint in this matter and issued a Report and Recommendation addressing that second amended complaint.   Doc. No. 14.   Fiedler objected to the second Report and Recommendation and provided additional information about his breach of contract claim.   Doc. No. 15.   Accordingly, I withdrew that Report and Recommendation so that I could address the arguments in his objection.   Doc. No. 16.

Fiedler's renewed motion to proceed *in forma pauperis* is now ripe for review.

## II.      RELEVANT FACTS ALLEGED IN THE COMPLAINT.

*A.      The Parties.*

Fiedler alleges that he is domiciled in and a citizen of Florida.   Doc. No. 9 ¶ 3.   He alleges that Wells Fargo's articles of association designate South Dakota as the location of its main office. *Id.*

*B.      The Mortgage Modification.*

Fiedler alleges that he had an adjustable rate mortgage for his residential property.   *Id.*   ¶ 10.   He applied for a mortgage loan modification.   *Id.* ¶ 6.   His application was approved, and Wells Fargo offered him a trial period in which his mortgage payment would be $1,257.17 for three months beginning November 1, 2017 and ending January 1, 2018.   *Id.* ¶¶ 8, 9.   The offer stated that his monthly trial payment was an estimate and may change in the final modification.   Doc. No. 10-1, at 3.   It also stated that Wells Fargo could not, at that time, calculate precisely the past due

arrearage amount or the amount of the modified loan payment that would be due after successful completion of the trial period and that, as the end of the trial period neared, it would calculate any past due amount "to determine your monthly payment and other modified loan terms."  *Id.*  It stated that the trial payments included escrow amounts for property taxes, homeowner's insurance, and mortgage insurance.  *Id.*  It contemplated that the trial period could extend beyond January 2018.  *Id.* at 1.  It stated that Fiedler could accept the trial period offer by calling Wells Fargo and sending in the trial payments.  *Id.*  It informed Fiedler that free credit counseling was available to him.  *Id.* at 2, 5.  It did not provide any information about what the interest rate would be if Fiedler ultimately received a permanent mortgage modification.  Doc. No. 10-1.

Fiedler accepted the trial period offer by making the three trial plan payments.  Doc. No. 9 ¶ 11.  On January 31, 2018, Wells Fargo sent Fiedler a letter enclosing a Loan Modification Agreement ("Agreement").  Doc. No. 10-2.  The letter stated that the Agreement "will reflect the terms of your modified mortgage."  *Id.* at 1.  It directed Fiedler to "read this letter so that you understand all the steps you need to take to complete your modification of your mortgage loan."  *Id.*  It explained some of the provisions of the Agreement, including an explanation that the section titled "The Modification" "outlines the terms of your loan modification, and identifies what will change on your mortgage loan.  You will see your outstanding balance, interest bearing principal, unpaid balance, deferred interest, fees, monthly mortgage payment and the maturity date."  *Id.*  It explained that the section titled "Your Loan Modification Terms" "details the changes you will see to the terms of your loan.  Changes may include your contractual due date and extended maturity date."  *Id.* at 1-2.  It directed Fiedler to "review this section to understand all of the changes to your modified loan."  *Id.* at 2.  The letter then provided that "[t]o complete your modification, you will need to sign and return the following documents along with the payment, if required, by

**FEBRUARY 15, 2018** . . . [:] One signed and dated copy of the Agreement . . . [;] Notice of Special Flood Hazard Area (SFHA), if enclosed." *Id.* Finally, the letter included a section titled "Details of your loan modification Agreement." *Id.* at 2. It stated, among other things, that the new principal balance was $357,344.99; the deferred balance was $101,374.04; the total modified monthly payment was $1,261.26 (including principal, interest, and, if applicable, escrow and escrow shortage amounts); and the new interest rate was 2.2500%. *Id.* at 2.

The attached Agreement provided that the new principal amount was $357,344.99 and the new deferred principal balance was $101,374.04. Doc. No. 10-3, at 1, 3-4. It required Fiedler to represent that he would obtain credit counseling in connection with the modification if Wells Fargo required him to do so. *Id.* at 2. After acknowledging a bankruptcy that Fiedler filed on August 6, 2009, it required Fiedler to represent that the Agreement was only valid "once the consent of the United States Bankruptcy Court or other applicable approval to modify the mortgage is received." *Id.* at 3. It required Fiedler to represent that, "during the course of the bankruptcy case, [Fiedler] did not, and does not intend to reaffirm the debt." *Id.* It set forth a payment schedule for the modified loan that gave Fiedler a 2.2500% interest rate and a $1,261.26 payment starting on February 1, 2018 and continuing for 60 months thereafter; a 3.2500% interest rate and a $1,383.11 payment starting on February 1, 2013 and continuing for 12 months thereafter; and a 4.1250% interest rate and a $1,493.66 payment starting on February 1, 2024 and continuing for 346 months thereafter. *Id.* at 4. The Agreement provided that these terms "supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate." *Id.* It also provided that it "supersede[s] the terms of any modification, forbearance, trial period plan or other mortgage assistance that the Borrower previously entered into

with Lender." *Id.* at 8. Finally, it required that Fiedler sign and return the agreement for it to be effective. *Id.* at 8-9.

Fiedler received a mortgage statement dated February 1, 2018, stating that his unpaid principal balance was $256,197.99. Doc. No. 10-4, at 5; Doc. No. 9 ¶¶ 14, 17. The February 1, 2018, statement also stated that his deferred balance was $78,750.00. Doc. No. 10-4, at 5[2]; Doc. No. 9 ¶ 19.

Fiedler alleges that Wells Fargo's actions amount to a breach of contract because: (1) Wells Fargo did not perform its part of "the deal" by providing him with a modified loan consistent with "the new interest rate"; (2) the Agreement and the letter transmitting the Agreement changed the principal amount of his loan to an amount that differs from what appears on his February 1, 2018, statement; (3) the letter transmitting the Agreement did not agree with the attached Agreement; (4) he was offered an interest rate of 2.25%, but the Agreement changed the interest rate over the life of the loan modification and Wells Fargo did not tell him that his modified payment would be an adjustable rate payment that would increase throughout the life of the loan; (5) the Agreement changed the deferred balance on his loan to an amount that differs from what appears on his February 1, 2018 statement; (6) the trial plan documents offered Fiedler free credit counseling to manage expenses, but the Agreement made it mandatory that he attend credit counseling if required by Wells Fargo; (7) the Agreement asked Fiedler to affirm the untrue statement that "during the course of his bankruptcy, [he] did not, and does not intend to reaffirm the debt"; (8) under the Agreement, Fiedler will be required to pay an additional lump sum payment after he has paid off the loan; and (9) "escrow (insurance and tax) were included in the monthly payment," but Wells Fargo "changed this

---

[2] The copy of this document filed with the Court is very difficult to read. Therefore, I assume that Fiedler has accurately represented its contents.

term to now make him make additional escrow payments outside his mortgage payment." Doc. No. 9 ¶¶ 14-26. He seeks specific performance of "the original agreement" and injunctive relief on Wells Fargo's pending foreclosure action. *Id.* ¶¶ 42-43.

      *C.*      *Fiedler's Bankruptcies.*

Wells Fargo filed a foreclosure action against Fiedler's property on February 19, 2015. Doc. No. 9 ¶ 28. Fiedler then filed Chapter 13 bankruptcy. *Id.* ¶ 29. Despite this, Wells Fargo continued its foreclosure action in circuit court and did not close the proceedings when Fiedler filed for bankruptcy. *Id.* ¶ 30. Wells Fargo knew about the 2015 bankruptcy because it filed a proof of claim in the bankruptcy case. *Id.*¶ 31; Doc. No. 10-8. Fiedler voluntarily dismissed the 2015 bankruptcy on May 19, 2016. Doc. No. 9 ¶ 32.

Fiedler refiled for Chapter 13 bankruptcy on May 24, 2017. *Id.* ¶ 33. Wells Fargo knew about the 2017 bankruptcy because it filed a proof of claim. *Id.* ¶ 34; Doc. No. 10-6.

Fiedler alleges that Wells Fargo violated the automatic bankruptcy stay, 11 U.S.C. § 362(a)(1) and (4), when it continued its foreclosure proceedings on May 26, 2017, by using an outdated order granting Fiedler's motion to dismiss his bankruptcy case without prejudice (Doc. No. 10-5) to reopen foreclosure proceedings against Fiedler in state court. Doc. No. 9 ¶ 35. He also alleges that Wells Fargo violated 11 U.S.C. § 362(a)(6) because it repeatedly tried to collect from Fiedler after he filed for bankruptcy. *Id.* ¶ 37. Specifically, from the time Fiedler filed for bankruptcy on May 24, 2017 until that case was dismissed on June 18, 2018, Wells Fargo sent Fiedler payment coupons inviting him to make voluntary payments on a pre-petition debt. *Id.*; Doc. No. 10-4. Fiedler alleges that Wells Fargo's continued collection actions while he was in bankruptcy left him feeling confused, harassed, taunted, and anguished and that he was "so angry with the torment that it caused him to be hospitalized." *Id.* ¶ 38. Fiedler alleges that Wells Fargo's

continued violation of the automatic bankruptcy stay "caused [him] to suffer from anxiety, loss of sleep, loss of consortium, fear and humiliation," as well as "mental anguish and uncontrollable high blood pressure."  *Id.*  ¶¶ 40-41.  He seeks, among other things, $250,000 in punitive damages and $225,000 in emotional distress damages.  *Id.* ¶¶ 44-45, 47.

### III.   Legal Standard.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), when a plaintiff seeks to proceed *in forma pauperis* the Court is required to consider whether the plaintiff's complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See also* Local Rule 4.07; *Mitchell v. Farcass*, 112 F.3d 1483, 1491 n.1 (11th Cir. 1997) (Lay, J., concurring) ("Section 1915(e) applies to all [*in forma pauperis*] litigants — prisoners who pay fees on an installment basis, prisoners who pay nothing, and nonprisoners in both categories.").

Federal Rule of Civil Procedure 12(b)(6) governs the assessment of whether a complaint states a claim upon which relief can be granted.[3]  Under Rule 12(b)(6), "a [pleading] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While this pleading standard "does not require 'detailed factual allegations,' . . . it

---

[3] Fiedler's objection to my second Report and Recommendation argues that it is inappropriate to apply the Rule 12(b)(6) standard in an *in forma pauperis* case.  Doc. No. 15, at 1-2.  This is incorrect.  The plain language of § 1915(e)(2)(B)(ii) requires a district court to dismiss an *in forma pauperis* case if it "fails to state a claim upon which relief may be granted."  As the Eleventh Circuit explained in *Mitchell v. Farcass*, 112 F.3d at 1489, the language of § 1915(e)(2)(B)(ii) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)," and the court applies "Rule 12(b)(6) standards in reviewing dismissals under section 1915(e)(2)(B)(ii)."  Fiedler's citation to *Denton v. Hernandez*, 504 U.S. 25 (1992), and its statement that a complaint filed *in forma pauperis* which fails to state a claim under Rule 12(b)(6) may nonetheless "have 'an arguable basis in law' precluding dismissal under § 1915(d)" is inapposite because § 1915 was amended in 1996—*after* the *Denton* case was decided.  The amended § 1915 explicitly allows for dismissal of an *in forma pauperis* action for failure to state a claim.  *See Bilal v. Driver*, 251 F.3d 1346, 1348-49 (11th Cir. 2001).  The current Rule 12(b)(6) standard is set forth above.

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). A pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a court must accept as true well-pled allegations, it is not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678.

Exhibits attached to a complaint are part of the pleading for "all purposes." Fed. R. Civ. P. 10(c). Moreover, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) (citation omitted). Thus, it is appropriate to review the exhibits upon which Fiedler relies to support his breach of contract claim. To the extent the exhibits contradict the allegations of the second amended complaint, the exhibits control.

## IV. ANALYSIS.

As an initial matter, I note that Fiedler has corrected his insufficient pleading of the citizenship of the parties. The second amended complaint now alleges that Fiedler is domiciled in and a citizen of Florida. It also alleges that Wells Fargo's articles of association designate South Dakota as the location of its main office. Doc. No. 9 ¶ 3. Because Wells Fargo is a national banking association, it is thus a citizen of South Dakota for jurisdictional purposes, *see Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006), and the parties are completely diverse. Nonetheless, upon review of the second amended complaint, I recommend that the Court dismiss Fiedler's breach of contract claim for the reasons stated below. However, I recommend that the Court grant Fiedler's *in forma pauperis* motion with respect to his claims for violation of the automatic bankruptcy stay and refer those claims to the bankruptcy court for resolution.

### A. Count I: Breach of Contract.

I recommend that the Court dismiss Fiedler's breach of contract claim because it fails to state a claim for which relief may be granted pursuant to the standard set forth in Federal Rule of Civil Procedure 12(b)(6). Under Florida law, the elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (citing *Knowles v. C.I.T. Corp.*, 346 So. 2d 1042, 1043 (Fla. 1st Dist. Ct. App. 1997)). "In order to establish the presence of a valid contract, a plaintiff must allege the existence of: (1) an offer; (2) acceptance of the offer; (3) consideration; and (4) sufficient specification of the essential terms of the agreement." *Id.* (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

In my Report and Recommendation on Fiedler's original complaint (which has since been withdrawn), I noted that Fiedler had not sufficiently alleged which terms of the modification agreement were breached. Doc. No. 3, at 5. Although Fiedler has now attached the documents that form the basis of his claim, his second amended complaint still does not identify which terms of the alleged contract between the parties were breached. He refers generally to "the deal," and it appears that he believes "the deal" was to have a loan modification with a reduced monthly payment, a fixed 2.25% interest rate, an unpaid principal balance of $256,197.99, a deferred balance of $78,750.00, no lump sum payment at the conclusion of loan payments, and other terms. *See generally* Doc. No. 9 ¶¶ 12-26. However, the second amended complaint does not direct the Court to any document in which Wells Fargo offered or agreed to such terms, and it does not appear that such a document exists.[4]

---

[4] Fiedler does not appear to allege the existence of an oral agreement to such terms. Even if he had, such a claim would be barred by the Florida Banking Statute of Frauds and due to be dismissed. *See*

To the extent that Fiedler contends that the trial period plan offer letter constitutes "the deal" that has been breached, the letter is clearly an offer to participate in a trial period that could make Fiedler eligible for a permanent loan modification, not an offer for a permanent loan modification itself. And, regardless, it does not include many of the terms (e.g. the fixed 2.25% interest rate and specific unpaid principal balance and deferred balance) claimed by Fiedler. Indeed, the offer for the trial period makes it clear that some of the terms of the permanent modification cannot yet be determined. Doc. No. 10-1, at 3. Thus, it cannot serve as the basis for his breach of contract claim.

Likewise, to the extent that Fiedler claims that the letter transmitting the Agreement is the contract that has been breached, it is clear that the letter is not itself an offer for a contract. Instead, it is simply a transmission letter, and its text makes clear that the Agreement itself reflects the proposed terms of the permanent mortgage modification. Doc. No. 10-2. Thus, Fiedler cannot rely on any perceived disparity between its terms and the terms of the Agreement for a breach of contract claim.

As to the remaining documents submitted by Fiedler, the Agreement itself includes many terms Fiedler finds objectionable; thus, it cannot be the basis for his breach of contract claim. Finally, Fiedler's mortgage loan statements are not contracts or offers for a permanent mortgage modification. They simply reflect the status of his mortgage in the absence of the mortgage modification agreement. Thus, because Fiedler still has not identified a contract provision that Wells Fargo agreed to and then breached, his second amended complaint still fails to state a claim for breach of contract. *Cf. George v. Wells Fargo Bank, N.A.*, No. 13–80776–CIV, 2014 WL 61487 at *4 (S.D. Fla. Jan. 8, 2014) (dismissing plaintiffs' breach of contract claim because although they

---

*Moragon v. Ocwen Loan Servicing, LLC*, No. 6:17-cv-2028-Orl-40KRS, Doc. No. 40, at 9 (M.D. Fla. June 22, 2018), *report and recommendation adopted by* Doc. No. 41 (M.D. Fla. July 12, 2018) (collecting cases).

alleged that defendant "breached the terms of the subject permanent loan modification," they did not identify which provision(s) of the permanent loan modification had been breached).

I note that, in his objection to my second Report and Recommendation (which has now been withdrawn), Doc. No. 15, Fiedler provided some more information about his breach of contract claim beyond what is stated in the second amended complaint.  Although it is not clear that the second amended complaint itself supports the arguments made in his objection, I address those arguments here for the sake of efficiency.  In his objection, Fiedler explained that, in his second amended complaint, he

> articulated that Wells Fargo offered to modify his loan if he completed three separate monthly trial payments.  Mr. Fiedler paid Wells Fargo the trial payments and was thereafter sent a letter than included a "**total modified**" loan payment amount.  However, another agreement attached to the loan did not match the "**total modified**" loan payment amount offered in the letter.  Further, the agreement attached to the letter made it impossible for Mr. Fiedler to sign because it contained "**unconscionable terms**" and the attached agreement did not match the "**total modified**" **loan** payment amount in the letter.  Wells Fargo breached the agreement by failing to provide the same **total loan modification** payment amount specified in the letter but instead changed and included additional terms so unconscionable that "**no one in their right mind would sign it**."

*Id.* at 2-3 (internal citations and footnotes omitted).[5]

With these arguments, it appears that Fiedler is suggesting that the contract that was breached is the January 31, 2018 letter enclosing the Loan Modification Agreement and that the breach occurred when Wells Fargo sent him a Loan Modification Agreement with terms that did not match the January 31, 2018 letter.  This argument is meritless for two reasons.  First, the January 31,

---

[5] Fielder also objected that my second Report and Recommendation "left out that the letter contained the words, '**total modified payment**.'"  Doc. No. 15, at 3.  This objection is not well taken.  While my second Report and Recommendation did not quote the letter, it noted that the letter stated that "the total modified monthly payment was $1,261.26 (including principal, interest, and, if applicable, escrow and escrow shortage amounts)."  Doc. No. 14, at 4-5.

- 12 -

2018 letter does not include all of the terms that the second amended complaint identifies as having been breached, including the $256,197.99 unpaid principal balance and the $78,750.00 deferred balance (both of which derived from Fiedler's mortgage statements). *See* Doc. No. ¶¶ 17-19, 27. Second, as explained above, the January 31, 2018 letter is not—on its face—a contract or an offer for specific contract terms. Fielder objects to my referring to the letter as a "transmission letter," Doc. No. 15, at 3 n. 4, but that is clearly what the letter is. *See* Doc. No. 10-2, at 1 ("Congratulations! Enclosed is your Loan Modification Agreement (Agreement). This Agreement will reflect the terms of your modified mortgage."). Under Florida law, to establish the existence of a valid contract (which is a prerequisite to establishing a claim for breach of contract), a plaintiff must show that there was an offer. *Senter*, 810 F. Supp. 2d at 1345. On its face, the January 31, 2018 letter does not include an offer that Fiedler could have accepted. Indeed, as explained above, all of the terms of the letter make it clear that the enclosed Loan Modification Agreement was the offer that Wells Fargo was making to Fiedler. Read in the context of the letter as a whole, the mere use of the phrase "total modified monthly payment" does not constitute an offer for or an agreement to a particular contract term. While the text of Fiedler's second amended complaint may allege that the January 31, 2018 letter was a contract, the text of the letter itself controls over contradictory allegations in the complaint. *See Griffin Indus., Inc.*, 496 F.3d at 1205-06.

As I explained in my second Report and Recommendation, it appears that Fiedler's allegations are not so much a claim for breach of contract as they are a complaint that the terms of Wells Fargo's permanent mortgage modification offer (as embodied in the Loan Modification Agreement attached to the January 31, 2018, letter) were not what he expected or what he would have preferred. This characterization is bolstered by Fiedler's objection to the Report and Recommendation, in which he explains that the Loan Modification Agreement attached to the

January 31, 2018, letter "made it impossible for Mr. Fiedler to sign because it contained **'unconscionable terms'**" and that Wells Fargo "breached the agreement by failing to provide the same **total loan modification** payment amount specified in the letter but instead changed and included additional terms so unconscionable that '**no one in their right mind would sign it.**'" Doc. No. 15, at 3.  But in the absence of any document showing that Wells Fargo agreed to Fiedler's preferred terms or a document binding Wells Fargo to offer him such terms—neither of which has been submitted to the Court—his breach of contract claim fails.  Accordingly, I respectfully recommend that the Court dismiss Count I of the second amended complaint.

        B.        *Counts II and III: Violation of the Automatic Bankruptcy Stay.*

In Counts II and III of the second amended complaint, Fiedler alleges that Wells Fargo violated the automatic bankruptcy stay, 11 U.S.C. § 362(a), by taking certain actions after he filed for bankruptcy.  Section 362(k) allows for a private right of action in cases where the bankruptcy stay has been willfully violated.  11 U.S.C. § 362(k).  In *Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1342 (11th Cir. 2005) (per curiam), the U.S. Court of Appeals for the Eleventh Circuit held that U.S. district court had original, non-appellate jurisdiction over a proceeding to recover damages for an alleged willful violation of the automatic bankruptcy stay.  In so holding, however, the court noted that, "[u]nquestionably, the district courts may 'provide that any or all cases under title 11 and any or all proceedings arising under title 11' be referred to the bankruptcy court for the district." *Id.* (quoting 28 U.S.C. § 157(a)).

Here, Fiedler alleges that Wells Fargo violated the automatic bankruptcy stay and seeks damages.  This claim does not appear to be frivolous.[6]  Accordingly, I recommend that the Court

---

[6] This Report and Recommendation does not constitute a finding that Counts II and III of Fiedler's second amended complaint state claims upon which relief can be granted.  Because I recommend that the Court refer Counts II and III to the bankruptcy court, I conclude that the bankruptcy court is in a better position to determine in the first instance whether Counts II and III state claims upon which relief can be

grant Fiedler's motion to proceed *in forma pauperis* as to Counts II and III of his second amended complaint and refer those claims to the U.S. Bankruptcy Court for the Middle District of Florida.

      C.     *Leave to Amend.*

Federal Rule of Civil Procedure 15(a) requires that leave to amend a complaint be freely given when justice so requires, and, ordinarily, a *pro se* party should be given one opportunity to file an amended complaint that states a claim within this Court's subject matter jurisdiction on which relief could be granted. *See Troville v. Venz*, 303 F.3d 1256, 1260 n. 5 (11th Cir. 2002). However, as the Supreme Court recognized in *Foman v. Davis*, 371 U.S. 178, 182 (1962), leave to amend may be denied based on the factual circumstances of the case, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ." The United States Court of Appeals for the Eleventh Circuit has found that denial of leave to amend based on futility is justified when the complaint as amended would still be subject to dismissal. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (quotation omitted).

Under this standard, Fiedler's claim for breach of contract is also due to be dismissed without leave to amend. I already recommended that Fiedler be given an opportunity to amend his complaint and provided specific instructions on how to state a claim for breach of contract. Fiedler took advantage of that recommendation and now has filed two amended complaints. When I again recommended that his breach of contract claim be dismissed, he filed an objection that further explained the basis of his breach of contract claim. Despite this, he still has not stated a viable breach of contract claim. Moreover, Fiedler has filed the documentation that supports his breach

---

granted.

- 15 -

of contract claim, and he has failed to submit a document embodying the terms of the "deal" he claims was breached. Accordingly, because Fiedler has twice failed to amend his complaint to state a viable claim for breach of contract and the documents attached to his second amended complaint show that leave to amend would be futile, I recommend that the Court not grant Fiedler leave to amend his breach of contract claim for a third time.

### V.    RECOMMENDATIONS.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **GRANT in part and DENY in part** Fiedler's renewed motion to proceed *in forma pauperis* (Doc. No. 7), **DISMISS** Count I (the breach of contract claim) of the second amended complaint (Doc. No. 9) without leave to amend, **ALLOW** Fiedler to proceed *in forma pauperis* on Counts II and III of his second amended complaint (the claims for violation of the automatic bankruptcy stay), and **REFER** Counts II and III of Fiedler's second amended complaint to the U.S. Bankruptcy Court for the Middle District of Florida pursuant to 28 U.S.C. § 157(a).

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

Recommended in Orlando, Florida on August 7, 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy